Chief Justice Robertson
delivered the Opinion, of the Court..
In part consideration of a tract of land, Campbell and McDonald, on the 19 th of January, 1819, assigned to John Dixon, two promissory notes upon Samuel T. Beall, for nineteen hundred and twenty six dollars and seventy seven cents each — one payable June the 18th, 1819, and the other payable December the 18th, 1819.
*604 In October, 1819, judgment was obtained o.n the note which had become due in June, and a fieri facias, which was shortly afterwards issued to enforce the judgment, been returned “no property,” a ca. sa. was issued j[n December, 1819, in virtue of which Beall was imprisoned.
In October, 1819, Beall mortgaged to Campbell and McDonald, several tracts of land and other property, to secure to them debts amounting to about four thousand dollars which he owed them, and also the amount of the two notes which they had assigned to Dixon — the mortgage reciting that they had become liable to Dixon upon their assignments. In February, 1820, Beall was liberated, in consequence of the following letters, which he received from Campbell and Dixon: — ■
“Warren County, February 1st, 1820.
“ Mr. Sam’I. T. Beall; — Sir,—I received yours of the “ 29th January, and marked the contents, as to the put- “ ting a stop to the execution of Mr. Dixon. It was not “ in my power, unless by his consent, as I had no control “ over the amount due him. On my getting home, in “ October last, I informed Mr. Dixon what was, done; “ he appeared to be satisfied to wait the collection of “ the money here of Ward and Finley, and is still satis- “ fied to wait, and says he never directed an execution “ to be issued for the same; and I know that I never di- “ rected any execution against you in the name of Mr. “ Dixon, myself, or any other person, and it is my wish “ that you should be immediately released from the ■ ■“ bounds, and also the wish of Mr. Dixon, who writes ' “ you on the- other- side.,
“ Yours, with respect,
“ Charles■ Campbell.”’
“February 1st, 1820.
“ Sir — I was perfectly satisfied with the arrangements “ made with you, October last, by Mr. Campbell, in re- “ gard to- the collection of the money from you — and “ have never given any direction for an execution to, “ issue against you,, and it is my desire and wish, that *605 “ you may be immediately released from your confine- “ ment.
“ Respectfully yours,
it r u tv “ John Dixon.
“ Mr. Sam’l. T. Beall, Bardstown, Ivy.” ■
The debt of Ward and Finley, alluded to in Campbell’s letter, was a note, for about nine thousand dollars, given by them to Roberts and Co., who had assigned about five thousand dollars thereof to Campbell and McDonald, for Beall’s benefit; and, in consequence of the arrangement mentioned in Campbell’s letter, it appears that Dixon took the obligation of Ward and Finley to himself, for three thousand and one dollars, and gave to-Campbell the following receipt:—
■ “March 1st, 1820. Received of Charles Campbell “ three thousand and one dollars, which sum is to be in “ part applied to the credit of a judgment obtained by “ me against Samuel T. Beall, in the Nelson Circuit “ Court, on a note assigned by Campbell and McDonald “ to said Dixon, and the balance of the three thousand “ and one dollars to be credited on a note which I now “ hold of said Beall, due the 18th of December, 1819.
“ John Dixon.”'
In April, 1821, Campbell and'McDonald filed a bill in Chancery, to foreclose the mortgage before described, and aver, among other things, in that bill, that — “they “ had taken back the note and judgment from Dixon, as they “ were bound to do in virtue of their assignment, and “ they, having paid and satisfied said Dixon, the amount of “ said note and judgment, are entitled to the same.”
On the 18th of June, 1821, Dixon re-assigned to Campbell and McDonald, the note on Beall, on which suit had never been instituted, and Campbell gave to him the following receipt:—
“ June 18th, 1821. Received of John Dixon, Samuel “T. Beall’s note for nineteen hundred and twenty six “ dollars, seventy seven cents, with said Dixon’s assign“ment thereon; which note I promise to return to said “ Dixon, or account to him for the same.

“Charles Campbell

Original bill in thia case — lor a discovery merely
Answer fy cross in'’the' transa”8 tions above reClted'
On the 6th of March, 1827, Campbell filed a bill of discovery, alleging that Henry’Dixon (the plaintiff ill error,) as administrator of John Dixon, (who, in the '' 7 x' 1 mean time, had died, intestate,) had brought an action at jaw on the foregoing receipt; that he (Campbell) had re-turned to the said administrator, according to his under° - , taking, the note on Beall, but that he could not show that fact in the trial to be had in the suit at law, unless he could obtain a discovery, upon oath, from Henry Dixon. He therefore prayed for such discovery.
Dixon, in his answer to the bill, alleged that, finding t^iat Beall was insolvent, Campbell requested the decedent (John Dixon) to give up to him the management of his judgment and of the note, assuring him, that he could eventually make the whole amount; that the intestate acceded to that proposition, and that, in consequence thereof, the judgment and note were included in.the mortgage from Beall to Campbell and McDonald — Beall was liberated — and the note was re-assigned; that the intestate was lulled in his lifetime, and that himself (the administrator) was lulled after his death, which occurred in 1823, by assurances that the mortgage would ensure indemnity, and that the amount due in consequence of the notes, should be paid; that some time in the year 1826, he (plaintiff) becoming impatient, applied to Campbell for a final settlement; who informed him that McDonald had been attending to the business, and would account with him, and handed him the note (which he had withdrawn from the chancery suit for foreclosing the mortgage,) as an authority to call on McDonald, and receive what might be due; but that there was no intimation to him, nor suspicion by him, that the note was delivered in discharge of the covenant of the 18th of June, 1821; that a large amount had been collected by Campbell, under the decree foreclosing the mortgage, and that property also of considerable value had been bought by him (Campbell,) under the same decree; and that Beall continued to be hopelessly insolvent. He made his answer a cross bill against Campbell, and, among ojher things, prayed for a decree for the amount which he claimed to be due.
Answer to the cross bill.
Decree of the circuit coui t.
Upon a bill for a mere discovery, there can be no decree, but the answer may be made a cross bill, upon which relief may be granted.
The various facts “nd t™mstan~ considered, and conclusion thereon, that C, the assignor, consented that B, the debt- or, should be discharged from prison, to which he had been committed for one of the debts assigned, and that the necessity of a suit upon the other, should be waved; that D, the assignee, agreed to wait the result of an effort by C, to enforce a mortgage that B had given him, to secure the assigned debts and for other purposes, but did not intend that C should be exonerated from his liability, as assignor: held, therefore, that though C may have been discharged from legal liability as assignor, by these proceedings — he remained bound, in equity, by force of the new agreements that must be implied from tho facts.
Campbell answered the cross bill; denied the jurisdiction of the Court; pleaded the lapse of time; denied the alleged proposition to, and agreement with, the intestate; insisted that he never attempted to control him in the management of the assigned notes, nor ever agreed to any suspension of legal remedy to coerce the amount of the judgment and of the remaining note from Beall; averred that he voluntarily included those notes in the mortgage, and afterwards took an assignment merely to aid in enforcing the mortgage, without any agreement to be liable in any other way, or to any greater extent, than was stipulated in his receipt of June, 1821; and insisted that, recourse upon the assignments of the notes had been lost by the negligence of the assignee, John Dixon.
The Circuit Court dismissed the cross bill, cancelled the receipt of 1821, and exonerated Campbell from further liability in consequence of the assignments, or of the mortgage. This writ of error is prosecuted to reverse that decree.
As the only prayer in the original bill was for a discovery, the decree for surrendering the receipt, and exonerating Campbell from all liability, was unauthorized and extra-judicial, even if, otherwise, it could have been proper. It must therefore be reversed. But, in remanding the case, the cross bill must be considered and disposed of; and,- consequently we must enquire into the plaintiff’s claims to the relief sought by his cross bill.
The legal insolvency of Beall at the date of the assignments, and his actual insolvency since, may be inferred from the facts and proofs exhibited in this record. In prosecuting the suit against him, on the note which first •became due, there seems to have been due and proper diligence, until his liberation 'from imprisonment; and there can be no reasonable ground for doubting, that he was liberated with Campbell’s knowledge and approbation, at his instance, and in consequence of the mortgage *608 and of some agreement between him and John Dixon. The note also, was evidently embraced in that agreement> anc^ consequently, the inference is strong and 'satisfactory, that Campbell dispensed with a suit upon ^he note, and undertook its collection himself. Shortly after the alleged agreement, and the liberation of Bealb the whole judgment and a part of the note were satisfied by the acceptance of the note for three thousand and one dollars, on Ward and Finley; and shortly after that, Campbell and McDonald alleged, in their bill filed to foreclose their mortgage, that they had settled their responsibilities with John Dixon, and were exclusively entitled to the management and benefit of the notes which they had assigned to him. How were these responsibilities adjusted? This is a matter of deduction altogether. But from any thing appearing in the record, it would be unreasonable to infer that John Dixon (prosecuting Beall with rigor to the extremity of legal coercion, and knowing that if Beall should be proved to be insolvent, Campbell and McDonald would at once be liable upon their assignments,) consented to liberate Beall, and forbear further experiment upon either of the notes, in consideration only of an assurance that Campbell would pay him if he could make the amount by the mortgage, but that neither McDonald nor Campbell should be responsible for any thing, in any event, excej?t so far as the mortgage should happen to be productive. Such an improvident and gratuitous agreement cannot be presumed. The only rational or consistent deduction from all the facts, is that, as there was reason for apprehending that the legal remedies in progress, against Beall, would speedily eventuate in his ascertained insolvency, Campbell, in order to postpone the responsibility which might immediately devolve on himself and McDonald, and avoid the unnecessary costs which would have been incident to another suit upon the other note; agreed to take upon himself the collection of the amount of both notes, and that John Dixon agreed to wait a reasonable time for that purpose, but with the understanding that Campbell should, after sufficient time had been allowed for a satisfactory experiment with the mortgage, still be *609 responsible to him for the full amount which should then ’ be due on both notes. Campbell’s receipt is not at all inconsistent with this almost inevitable deduction from1 the othey .facts. He bound himself by that, it is true, only to account with Dixon, or return to him the note. But, in the event of his returning the note, surely his pre-existing liability was not to be extinguished: on the contrary, the restoration of the note must have been required by Dixon, as an additional security for his ultimate indemnity for the various contingencies to which his indulgence and the consequential delay might subject his claims. Had the. note been returned within a reasonable time, John Dixon’s intermediate forbearance could not have exonerated Campbell from his responsibility as an assignor, and more especially as the note had been re-assigned to himself and McDonald. And had Campbell failed to make any thing out of Beall, and thereupon had returned the note to John Dixon, a suit on the note and a formal prosecution of Beall to insolvency, would not have been necessary to fix, in equity, Campbell’s liability as an assignor, or that also of McDonald, if he authorized or sanctioned Campbell’s arrangements with Dixon. And surely, in that state of case, the statute of limitations would have been inapplicable. The recitals in the mortgage — its date — Campbell’s letter to Beall — the payment of the three thousand and one dollars — the allegations in the bill for foreclosure — the reassignment of the note — the conduct of the parties — these and other facts, when scrutinized and properly considered, tend to show, beyond any reasonable doubt, that a new agreement, essentially different from that implied by the assignments, and from which other and far different liabilities resulted, had been substituted by Campbell and John Dixon, and superseded the legal effect and consequences of the assignments. The character and effect of that agreement, though not established by direct and positive proof, may be inferred with a certainty sufficiently satisfactory for the purposes of justice, in á Court of Equity, and have already been suggested in general terms.
The assignment {supra) was by ■two joint obligees; both would have been exonerated ■but for the new agreements: if . they were made by one, without 'the concurrence ■of the other,'the latter would not 'he bound thereby, but wouldreanain exonerated; if he concurred, he would be liable to contribution, to pay the «debt.
An assignor finds "’that the payment ¡of the debt will ultimately devolve on him; he iappiiesto the asr signee, ’-who a'grees to allow ■him time to fore•closeamortgage, by which he is indemnified; reassigns the note to him, anti takes ‘his receipt, containing a promise to return or account for it. Afterwards,the note :is, for some pnr■pose (for what, is matter of dispute,) put into the hands of the ¡assignee (or his adm’r.) Heidi that chancery has jurisdiction to enforce'the liability of the assignor, upon the note and receipt, — because :it is doubtful whether any action could be maintained upon the covenant in the receipt, to account for the note, after the note had been delivered to the assignee, and was in his bands; because, after the re-assignment, the assignee could not sue the obligor in his •own name, nor maintain ,any.suit upon the assignment; and especially, because, the ■assignor’s liability, connected with the mortgage and agreement in-relation thereto,rendered 'him liable, m equity, for the full amount of the assigned debt — whereas, at law, the damages to be recovered,'might perhaps, be reduced toa nominal sum, by showing -the insolvency of the obligor in-the note receipted for. And-The fact that the assignor held a mortgage for the debt, and that the assignee agreed to indulge him, until the result of an attempt to make the money by that means, should appear, created a trust — peculiarly appropriate for equity jurisdiction.
It does not appeal* whether McDonald concurred with with Campbell in his arrangements with John Dixon; and this Court has not now the means of ascertaining whether he could still be held liable, or to what extent. But, as the receipt and letter to Beall import the separate and individual acts of Campbell, and as there is no intimation in the cross bill, or in the answer to it, that McDonald was, in any way, associated with Campbell in the new agreement which has been alluded to, and as also, Campbell alone bought Dixon’s land, and for his own benefit, it would primafacie appear that he aloné is responsible; and consequently, McDonald was not a necessary party. If, howevér, McDonald sanctioned Campbell’s arrangements, or authorized them, he might be compelled by Campbell to contributé to the debt due to Dixon.
Accoi’ding to our interpretatioxx of the facts, and our deductions from them,' Camp bell is equitably liable for the amount still remaining due on' the note, whether he retunied it or not, in fulfilment of his undertaking in his. receipt. If he restored the note, in good faith, agi’eeably to his receipt, he was not thereby exonerated from all liability, although he would have escaped an action for a breach -of his specific undertaking. After the re-assignment of the note, the plaintiff could not have sued Beall in his owix name; moxbover, the utter inutility of any suit ágainst Béall oh the note, had been sufiiciexxtly ascertained; the re-assignmexxt to Carnpbell and McDonald would 'have barred an action at law on their drigincLl assignmerxt, and the only remedy would have been on the substituted liabilities of Campbell; and upon these, it is very doubtful whether any action at law could have beexi maintained, after the note had been x-etunxed. But *611 nevertheless, it is obvious that the plaintiff would still have been entitled to the whole amount remaining due of the note, and that Campbell would have been, to that extent, liable in equity. If his liability could not otherwise be shown, his original assignment which, so far as he was concerned, had never been waived or discharged, would be sufficient to establish it. And it is evident that a suit in Chancery would be the only appropriate mode of enforcing that liability against him alone; and it would seem that McDonald had been absolved from his: liability by the re-assignment and the lapse of time, unless he concurred with, or sanctioned, Campbell’s arrangements — of which there is no proof in this case.
An assignor holds'a mortgage made' by the debtor, as-a security for the-assigned notes and other debts; and, having become liable upon his assignment, to the assignee,the latter agrees-to wait the result of an attempt to enforce the mortgage,before he presses-the assignor: held that, in equity, the assignee should be deemed entitled to priority of payment. a co-mortgagee;
But if the note was not restored in discharge of the-receipt, then, although a suit at law might have been maintained on the receipt, nevertheless the peculiar character and circumstances of the case would present a fit subject, for the cognizance of the Chancellor. A suit on the receipt might not have secured full reparation. In a suit on the receipt alone, perhaps the damages might have been reduced to almost nothing, by proving t[rat nothing could have been made out of Beall by a suit on the note. But the mortgage, especially when connected with the receipt and other extraneous-facts, shows how Campbell was to “account” to Dixon, and when. And hence a trust is established — which could-be properly enforced in equity only, where all the circumstances can be considered together, and duly weighed,, and where full and complete justice-may be done.
The foregoing letters from Campbell and Dixon to Beall, show that Dixon was to have a part of the debt on Ward and Finley, which Campbell had obtained the benefit of through Beall, simultaneously with the execution of the mortgage; and the recitals in the mortgagee, — the receipt — the re-assignment — the decree on the mortgage— and other circumstances — tend to show satisfactorily that, after Dixon had taken the note of Ward and Finley for three thousand and one dollars, and receipted to Campbell for that amount, the residue of his debt on *612 Beall was to be made out of the mortgage, and Campbell was still to be liable in consequence of his assignment— if, after a sufficient experiment with the mortgage, that not keea mac[e, About nineteen hundred dollars were collected under the decree foreclosing the mortgage; and it is evident that still more may be made, or has probably been made. But the amount which has been certainly made is more than sufficient to pay what remains due on the no.te which Dixon re-assigned, and for which Campbell receipted to him.
Dixon should not be restricted toa rateable proportion of the sum which has been collected under the' mortgage: first — because, asoné object of the mortgage was to secure what was due to him, and the mortgagees themselves, or at least one of them, still continued liable to him for that debt, on an independent contract, it should be deemed to have been the intention of the parties', that he should be entitled first to his debt out of the avails of the mortgage. Second. As it may be inferred that Camphell, and he alone, was to account to Dixon, for the balance remaining due, out of the avails, of the mortgage, and was, of course, to have a reasonable time for that purpose, it should also be presumed, that Dixon would have a right to those avails whenever they should amount to a sufficient sum to pay him, and to that extent should be deemed, in Equity, a co-mortgagee entitled to precedence, even though Campbell was otherwise individually liable to him, as an assignor whose liability had never been extinguished in equity, but only extinguished at law by the re-assignment, and postponed in consequence of a ' collateral arrangement intended for an additional security. It seems to us, therefore, that Campbell is liable for whatever remains due of Beall’s note; and that that liability may be enforced in a Court of Equity; which is, in fact, the only forum competent to take cognizance of the whole case, and enforce the agreements of the parties.
As the Chancellor would have had jurisdiction of an . original bill, and as the subject matter of Campbell’s bill, and that of Dixon’s cross bill, are essentially connected, *613 the Circuit Court had cognizance of the cross bill. The suit on the receipt should not bar this suit. The two suits are not only not identical in their objects, but the continued pendency of the action on the receipt, has not even been suggested in the record, and should not be presumed.
As the facts authorize the inference, that the assignee had agreed to allorv the assignor a reasonable time to make the money by a suit upon a mortgage given by thedebt- or, before tire assignor should be required to pay— the statute oflimitations did not begin to run against the assignee, and in favor of the assignor, until the money was made upon the mortgage, or the efforts to make it had proved unsuccessful. Ante 609.
From what has already been said, it follows, as a necessary consequence, that the statute of limitations does not apply to this case; because Dixon’s cause of action did not arise until the money had been collected' under the mortgage, or until Campbell had reasonable time to enforce the mortgage; and five years had not elapsed from the collection of the money under the decree foreclosing the mortgage; and, moreover, the note had not been restored to Dixon’s administrator, (if ever restored at all, in discharge of Campbell’s receipt,) five years, when the cross cross bill in this case was filed.
Although there has been some irregularity in the proceedings, we will consider the merits of the case as they should be considered had there been no suit on the receipt, and had the subject matter of the cross bill been presented in an original bill. And thus viewing the case, it results, from what has been before suggested, that the plaintiff in error is entitled to relief, and should, on the return of the cause to the Circuit Court, have a decree for the amount remaining due on the note which was reassigned to Campbell and McDonald, and a copy of which is exhibited in the record.
Wherefore, it is decreed and ordered, that the decree of the Circuit Court be reversed, and the cause remanded, with instructions to render a decree conformable with this opinion.